Good morning. My name is Steve Rawls and I represent Ms. Montoya-Samaniego in this case and she is the appellate. The issue here is the reasonableness of the stop and whether or not the factors articulated by the United States Border Patrol agent to the courts in this case are the factors that were articulated by him. This case is not your typical stop case that this court has seen or that the Supreme Court has ruled on. It's somewhat different. It's different because the observations that took place in this case lasted no more than three minutes. The time of day was approximately 1.50 in the afternoon. It was a Saturday. The traffic flow at the intersection is described as medium to heavy. This is a paved intersection and there were no reports of any illegal activity or suspicion taking place at that point in time. The question that this case raises is whether every person that lives near the border will be subjected to this kind of activity by Port Patrol if the vehicle proceeds in a northerly direction. If it proceeds on a route that does not go by a checkpoint at any of the state routes or whether or not it goes by what is known as a hit zone. And it's riding low? Well, the Border Patrol agent qualified those terms and said it was slightly lower than normal. You know, yes. You can say that that is a different qualification of riding low. We're not talking about the heavily laden vehicle and we're not talking about a vehicle that is sagging in the back. We're talking about a vehicle that is, quote, riding slightly lower than normal, unquote. Those were the words of the Border Patrolman. The question becomes is whether or not every person traveling a northerly direction that stops at an intersection that may have a vehicle who's, who may, which may be driving a little bit low should be stopped. The factors articulated here in this case are very, very limited. Mr. Earls, let me ask you a question about the license plate series. I got a bit confused from the record. Is it your position that the officers' belief that a recently registered car might indicate that it's involved in drug trafficking is not based in the record? Well, the Border Patrol agent believes that vehicles with recently registered license plates are more apt to be involved in smuggling activity because they've had a series of vehicles that have had recently registered license plates. This vehicle here had the letter P in it. It was 869PCJ. And he stated that those license plates, they've seized a number of them. But the problem with that argument is that you begin with PAA000 and you conclude with PZZ999, which brings in almost a million license plates. See, I guess what I don't quite understand about that universe is he's saying a lot of those recently registered cars, he had personally been involved in seizing and were involved in smuggling and knew, based upon his intelligence, that there were lots more. So if there were lots of them that were, what difference does it make that there were also a ton of them that weren't? I mean, it doesn't, is it not a factor that he could factor in? Well, is it reasonable to factor that in? Because when he testified in August, they were already up to the letter S. So that means that there were almost 4 million license plates that were recently issued. If they had seized, for instance, even 200 with recently registered plates, what fraction of the population is that? And do we not begin to say that we are casting such a wide net that maybe one ---- Sure. If they went all over the State of Arizona trying to find P-series license plates, but in an area that's that close to the border, known to be frequented by smugglers and the cars riding low, it just seems to me like it might be sensible to say, and besides, it's fairly recently registered. But you can say that about every car that's issued. Yeah. You know, there's not just one dealership. It's a fairly large populace that lives in that area, where you've got people buying and selling cars all the time. Now, does every car that gets bought become the object of suspicion? And this is what we're led to believe here, that because a vehicle has a recently registered license plate, all of a sudden you can cast that into that large group of suspicion. And I, you know, granted, what he testified to was, yes, you know, that's one of the reasons at all, in light of the fact that you have too many innocent drivers with recently registered license plates. The other item that I didn't find that was much of a factor is that the traveling away from the border. The distance between the intersection where the account was first seen and the border was approximately 19 miles. There's nine miles of pavement that go from that intersection to the point that you hit a dirt road. Then you have approximately seven miles until you hit Highway 80. And then you have two miles of brush. There's no indication at all on the record. And the agent had no information or evidence that that vehicle ever came from the border. There were never any censored activities. There was no reports of any illegal activity. There was nothing. The first time that vehicle was seen was when the truck in front of it turned right and then they saw this vehicle approach the stop sign and also make a right turn. There's nothing in the record that indicates that this vehicle was ever coming from the border. I can understand the issue of proximity to the border when you start looking at the Arvizo case, where you've got a family of approximately five, the parents and the three kids, and you're off on Rutger Canyon Road, which is approximately 30 miles to the west of where this stop took place. And there you are on a dirt road. You've got censored activity. You've got a stop similar to this vehicle being made one week before. There's no recognition of this vehicle because the agent is familiar with that area. And they are headed to a recreational site that nobody goes to in a two-wheel driver. There is that vast difference right there. There you've got the observations of the three kids waving mechanically at the agent as he's following them, and he follows them for a span of almost five minutes. That's when they turn into a route that nobody would go into. The difference here is just day and night. Here, the observation that takes place here is from the stop to about three quarters to one mile. There is no unusual activity. And going to Your Honor's question, they're asked to ride in low. If you look at the record here, there's nothing that indicates the same thing in this car. The agent was asked, how did the vehicle approach the stop sign? He says, normal. When it accelerated, was there anything unusual? No, there wasn't. As he followed it, there was nothing unusual in the pattern and mode of driving that vehicle. It's a fairly low standard, isn't it? Well, it's becoming a fairly low standard. But I, well, it is and it isn't. I don't disagree with the Arvizo decision because I think that in that case, I think you did have the agent there stuttered, had reasonable suspicion to make that stop because of the circumstances of it. In this case, anybody could have been stopped. You take any car that's, as the agent described, five to 15 years old, driving slightly lower than normal according to his, and he pulls him over. Based on what? On those factors, on the fact that he's driving north. Anybody that lives anywhere at any point in time is going to have to drive north. You can only go four directions. And at one point or another, you're going to have to drive north. And I think that aspect in and of itself should not have been considered. And the proximity, absent any other factors, should not have been taken into consideration. Thank you. Okay. Thank you. Mr. Sharda. Good morning, Your Honors. May it please the Court. My name is Meena Sharda. I'm an assistant United States attorney in the District of Arizona. And, Your Honors, the district court correctly denied the defendant's motion to suppress because War Patrol agent Gerald Wilkie had reasonable suspicion to stop the defendant's vehicle. It's a pretty thin case, don't you think? Respectfully, no, Your Honor, I don't. Because I believe that the agent was able to articulate specific facts for the reasons for why he believed that there was reasonable suspicion to stop the vehicle. The district court agreed with a number of those facts. One, that there was a checkpoint avoidance. That there was a permanent checkpoint on State Route 80 and 90. And there was higher illegal alien or drug activity on Highway 191. They had, Border Patrol agents had created what's called a hit zone. And that hit zone was just west of where Agent Wilkie decided to observe traffic. He observed that the defendant's vehicle was intending, in his estimation, to avoid that hit zone. That was the second fact that the district court took into consideration. In fact, based on his training and experience, the central highway area, the area that the defendant was driving in, was, in his words, more notorious for smuggling activity, whether it's illegal aliens or drugs. In addition, the court indicated that the PZ plate, the newly registered plate, was something that was a trend that Border Patrol agents were seeing. That of the 7,000 vehicles that they had seized the year before, that 60 percent of those were newly registered vehicles, a trend that they had seen. And he indicated that now that trend moved from the PZ plates to S plates. In addition, the court noted that the vehicle was riding low. Now, Agent Wilkie did say it was slightly lower than normal. Nevertheless, it was riding low. And that was something that even after the defense investigator testified, even after not having a variety of things that it took into consideration, like the PSI of the tires, the type of, the way the tires, or the way the weight was distributed in the vehicle itself, nonetheless, it still was riding low at that time. If a 200-pound person had been sitting in the back seat, you had about the same amount of chant in the car. Is that right? Say that again, Your Honor. I'm sorry. Pass it. Now, the additional, the additional factors that the court didn't take into consideration, I think this Court can, and it's an over-review, is the actions, a few, about three factors that the court did dismiss. One was the actions of the defendant. That is that she was stiff and nervous and had no eye contact. The close proximity to the border, about 16 to 18 miles away from the border, was where she was driving. And the proximity to the shift change. The magistrate court had indicated that she was going to give essentially an hour time span. Now, Agent Wilkie had testified in his experience about 90 minutes from before and after a shift change is generally when there's an increase in smuggling activity. He had stopped the vehicle at 150 miles. Now, the district judge didn't consider the eye contact, didn't consider some of these things you're mentioning. Is that right? That's correct, Your Honor. I think, however, this Court in its de novo review can take those into consideration in the totality of the circumstances to determine whether or not. So you think we should consider some of the things the district court did not consider. Is that right? Yes, Your Honor. And I think the court can do that. What happened to the tandem driving factor? Your Honor, I believe that the tandem driving factor, that the agent sort of initially believed that was the case. And I think the record bears out that after the vehicle took off, his attention, the truck took off, his attention was more to the defendant. And then he articulated his factors. So you agree there was no tandem driving? I think that yes and no, Your Honor. And the reason I say that is that I think initially part of what Agent Wilkie decided in determining looking at this vehicle, the defendant's vehicle, was that he initially believed that there was some tandem driving. Afterwards, after the vehicle took off, his attention was more directed towards the defendant. I think that was what sort of just made him look at the defendant's vehicle itself. Now, and then the close proximity to the shift change as well was a factor that he took into consideration. The defendant argues in part that this happened sort of in a three-minute time span. Now, in the record, Agent Wilkie does indicate that each of these factors went through his head as he was following the defendant's vehicle. And at the end, he decided that he had reasonable suspicion, and we believe that he did, to stop the vehicle. The defendant argues in part that this could be any innocent individual that is driving in southern Arizona. Each of these factors, Your Honor, I would submit that do rise to the level of reasonable suspicion. This Court and the United States Supreme Court has indicated that to parse out each factor to determine whether or not there's an innocent explanation is not the way reasonable suspicion analysis should occur. It should be in the totality of the circumstances. The government would submit that arguably you could parse out every factor, potentially in every case, and then say, well, then, any innocent person could be doing this. Therefore, there wasn't reasonable suspicion. That would require that government agents, short of seeing criminal activity itself, couldn't stop a vehicle or stop an individual if there was reasonable suspicion without actually seeing the criminal activity itself. There was reasonable suspicion. Reasonable suspicion existed in this case for the defendant to be stopped by Agent Wilkie, and we ask that the conviction be affirmed. Thank you. Thank you, Mr. Rawls. Mr. Sharda. Thank you, Judge. At no point have we tried to sparse out the facts in this case. As a matter of fact, we've wholly embraced the Arvizo reasoning behind this. What we have done is we have said that there just is not sufficient factors here to have justified the stop. I have three minutes. Is that correct? You're over by 12 seconds. Oh, I'm sorry. That's all right. Do you have one short point? No. Basically, I just want to address the fact that our pleadings have embraced the Arvizo factors. We just don't find the factors necessary to justify the stop. Thank you. Thank you, counsel. The matter just argued will be submitted.
judges: Rymer, Silverman, Reed